# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT CARTER, | : | |
| | : | **CIVIL ACTION** |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **No. 18-2366** |
| VINCENT MOONEY, et al. | : | |
| | : | |
| Respondents. | : | |

## ORDER

**AND NOW**, this 28th day of May, 2020, upon consideration of Petitioner Robert Carter's Petition for Writ of Habeas Corpus (ECF No. 1), Respondents Vincent Mooney, the Attorney General of the State of Pennsylvania, and the District Attorney of Philadelphia County's (collectively, "Respondents") "Response in Opposition to Petition for Writ of Habeas Corpus" (ECF No. 18), the Report and Recommendation of United States Magistrate Judge Marilyn Heffley (ECF No. 19), Petitioner's "Request for Leave to File Supplemental Petition and Response in Opposition to the Commonwealth's Response" (ECF No. 20), and Petitioner's "Request for Leave to Supplement and that this Court Treat his Response filed on 7/17/2019 as an Objection to U.S.M.J. Marilyn Heffley's Report [and] Recommendation" (ECF No. 26), I find the following:

**FACTUAL BACKGROUND**[1]

  1.  On April 19, 2013, Petitioner was convicted by a Philadelphia County jury on multiple counts, including third-degree murder, homicide by vehicle, causing an accident involving death while not properly licensed, aggravated assault by vehicle, first-degree aggravated

---

[1] In lieu of engaging in a lengthy discussion of the factual background of Petitioner's state conviction and resulting sentence, I incorporate by reference the factual and procedural history as set forth in the Report and Recommendation.

assault, recklessly endangering another person, and receiving stolen property. These charges arose from an April 5, 2011 incident in which Petitioner, driving a stolen vehicle, ran a red light while evading police officers in pursuit and smashed into another driver. The collision resulted in the death of the passenger in the vehicle driven by Petitioner, injury to the driver of the other car, and injury to three pedestrians who were hit during the collision (one of whom later died).

2. On the same date as his conviction, the trial court sentenced Petitioner to an aggregate term of twenty-five to fifty years' imprisonment.

3. Petitioner filed a post-sentence motion, which was denied on August 6, 2013. Thereafter, he timely appealed to the Pennsylvania Superior Court, raising issues regarding (1) the sufficiency and weight of the evidence against him and (2) the trial court's decision to allow the admission of evidence of prior instances in which Petitioner, while operating a motorized vehicle, had fled from police. On July 15, 2014, the Superior Court rejected these challenges and affirmed the judgment of sentence.

4. On August 4, 2014, Petitioner filed a *pro se* petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541 *et seq.*, setting forth multiple claims of ineffective assistance of trial counsel. The PCRA court appointed counsel, who subsequently filed a "no merit" letter and moved to withdraw his representation. The PCRA court relieved the original PCRA counsel and appointed another attorney to represent Petitioner. That attorney also filed a "no merit" letter and moved to withdraw.

5. On February 22, 2016, the PCRA court issued notice pursuant to Pennsylvania Rule of Criminal Procedure 907, advising the parties that it intended to dismiss Petitioner's PCRA petition without a hearing. On March 24, 2015, when no response was filed, the PCRA court dismissed the petition as meritless.

6.	Petitioner filed a timely appeal to the Pennsylvania Superior Court. On appeal, Petitioner argued that his trial counsel was ineffective in failing to (1) object to the autopsy report because the medical examiner who conducted the autopsy did not testify and (2) request that the jury be instructed on involuntary manslaughter as a lesser included offense to homicide by vehicle. On May 26, 2017, the Superior Court found both claims to be meritless and affirmed the dismissal of Petitioner's PCRA petition. On December 20, 2017, Petitioner's petition for allowance of appeal with the Pennsylvania Supreme Court was denied.

7.	On June 6, 2018, Petitioner filed a *pro se* petition for writ of habeas corpus in this Court. He seeks habeas relief based on the following: (1) the trial court denied him a fair trial when it admitted evidence of prior bad acts; (2) the evidence was insufficient to support a guilty verdict as to third-degree murder and aggravated assault; (3) trial counsel was ineffective in failing to object to the autopsy report introduced at trial where the coroner who performed the autopsy did not testify as to the report; (4) trial counsel was ineffective in failing to communicate with him as to the advantages and disadvantages of the plea deal before he rejected it; and (5) trial counsel was ineffective in failing to request that the jury be instructed on involuntary manslaughter as a lesser included offense of homicide by vehicle.

8.	I referred the habeas petition to United States Magistrate Judge Marilyn Heffley for a Report and Recommendation ("R&R"). Judge Heffley issued an R&R recommending that (1) Petitioner's claim that the trial court erred in admitting evidence of prior bad acts and thus denied him a fair trial is non-cognizable, procedurally defaulted, and meritless; (2) Petitioner's claim that the evidence did not support his conviction for aggravated assault is procedurally defaulted and meritless and Petitioner's claim that the evidence did not support his conviction for third-degree murder is meritless; (3) Petitioner's claim that trial counsel was ineffective in failing to object to

testimony regarding the autopsy report is meritless; (4) Petitioner's claim that trial counsel was ineffective in failing to sufficiently explain to him the plea offer is procedurally defaulted and meritless; and (5) Petitioner's claim that trial counsel was ineffective in failing to request a jury instruction of involuntary manslaughter as a lesser included offense of homicide by vehicle is meritless.

9. On July 10, 2019, Petitioner filed a request for leave to file a supplemental petition and response in opposition to the Commonwealth's response to the petition. On July 15, 2019, Judge Heffley dismissed that request as moot, informing Petitioner that he may seek to present any additional arguments in support of his petition to me in the form of objections to the R&R.

10. Over two months later, on September 25, 2019, Petitioner filed a request for leave to supplement his petition and treat his response "filed on 7/17/2019" as an objection to Judge Heffley's R&R.

11. Upon consideration of this request, I construe the arguments raised in Petitioner's July 10, 2019 as objections to the R&R.[2]

---

[2] In his September 25, 2019 filing, Petitioner also requests that he be permitted to supplement his petition to raise one additional claim that he "uncovered" with the assistance of a "fellow inmate/paralegal." (Pet. Req. to Suppl., ECF No. 26, at 2.) Petitioner claims that his trial counsel was ineffective for failing to request that the jury be instructed on involuntary manslaughter as a lesser included offense of third-degree murder. First, I do not construe Petitioner's request to add this habeas claim as an application for a second or successive habeas petition because no final judgment has been rendered on the merits of any of the claims in Petitioner's pending habeas petition. See 28 U.S.C. § 2244(a) ("No circuit or district judge shall be required to entertain an application for writ of habeas corpus . . . if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus . . . .").

Yet, I do conclude that Petitioner's request is time-barred. Petitioner submitted his request to supplement the habeas petition long after the one-year period of limitation had lapsed. See 28 U.S.C. § 2244(d)(1). The United States Court of Appeals for the Third Circuit has explained that, "allowing a habeas petitioner to amend a habeas petition in order to raise a new claim or theory of relief would frustrate Congress' intent under the AEDPA. But . . . insofar as a petitioner seeks to amend his petition to 'provide factual clarification or amplification after the expiration of the one-year period of limitations, then Fed. R. Civ. P. 15(c)[(1)]—describing when an amendment relates back to an original pleading—governs.'" Peterson v. Brennan, 196 F. App'x 135, 140–1 (3d Cir. Sept. 26, 2006) (quoting U.S. v. Thomas, 221 F.3d 430 (3d Cir. 2000)). Here, Petitioner does not seek to provide factual clarification or amplification of one

**STANDARD OF REVIEW**

12. Under 28 U.S.C. § 636(b)(1)(B), a district court judge may refer a habeas petition to a magistrate judge for proposed findings of fact and recommendations for disposition. When objections to a report and recommendation have been filed, the district court must review, *de novo*, those portions of the report to which specific objections have been made. 28 U.S.C. § 636(b)(1)(C); Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In performing this review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

13. Although courts must give liberal construction to *pro se* habeas petitions, "[o]bjections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review." Gray v. Delbiaso, No. 14-4902, 2017 WL 2834361, at *4 (E.D. Pa. June 30, 2017), appeal dismissed No 17-2569, 2017 WL 6988717 (3d Cir. 2017); see also Tucker v. Commonwealth, No. 18-201, 2020 WL 1289181, at *1 (E.D. Pa. Mar. 18, 2020). "Where objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled." Prout v. Giroux, No. 14-3816, 2016 WL 1720414, at *11 (E.D. Pa. Apr. 29, 2016); see also Luckett v. Folino, No. 09-0378, 2010 WL 3812329, at *1 (M.D. Pa. Aug. 18, 2010) (denying objections to R&R because "[e]ach of these objections seeks to re-litigate issues already considered and rejected by [the] Magistrate Judge . . . .").

---

of his current habeas claims. Instead, he explicitly seeks to supplement his petition to add "one additional claim for relief that warrants federal habeas review." (Pet. Req. to Suppl., ECF No. 26, at 2.) Petitioner currently argues in his petition that his trial counsel was ineffective for failing to request that the jury be instructed on involuntary manslaughter as a lesser included offense of homicide by vehicle. Now, he seeks to add an ineffective assistance of trial counsel claim based on how the jury was instructed as to a different charge, third degree murder, which, as Petitioner acknowledges, states an independent ground for habeas relief. For this reason, I conclude that Petitioner's new habeas claim is time-barred and will deny his request to supplement the habeas petition.

**DISCUSSION**

### *Objections to Recommendation on First and Third Habeas Claims*

14.     Petitioner's objections to the recommendation on his first and third habeas claims, identified in Paragraphs 7 and 8 *supra*, are both verbatim statements of the arguments raised in his petition and rejected by Judge Heffley in the R&R. (Pet., ECF No. 1, at 9–12; Pet. Objs., ECF No. 20, at 1–3, 8–9.) These objections seek to re-litigate issues already considered by Judge Heffley and are not entitled to my *de novo* review. Even if these objections were subject to my review, I find no clear error in Judge Heffley's recommendation on these claims. Therefore, Petitioner's first and third objections are overruled.

### *Objection to Recommendation on Fourth Habeas Claim*

15.     Petitioner's objection to the recommendation on his fourth habeas claim, identified in Paragraphs 7 and 8 *supra*, although near-verbatim to the arguments in his petition, responds directly to arguments relied on by Judge Heffley in the R&R. Petitioner contends that, although it is true that this claim is procedurally defaulted, it meets the exception to default set forth in Martinez v. Ryan, 566 U.S. 1 (2012), because the underlying ineffective assistance of trial counsel claim is "substantial" or "has some merit."[3] Petitioner argues that the state court record, which allegedly belies Petitioner's claim that trial counsel did not explain the plea offer, does not reflect what actually transpired. Petitioner explains that trial counsel never informed him of the chances

---

[3]     In Martinez, the United States Supreme Court noted that when a state requires a petitioner to raise an ineffective assistance claim on post-conviction review, rather than on direct appeal, a post-conviction relief hearing is the first opportunity the petitioner has to have his or her ineffective assistance claim heard. 566 U.S. at 9–13. The Court, therefore, concluded that a habeas petitioner may establish cause and prejudice to allow a court to hear a defaulted ineffective assistance claim by showing that his or her post-conviction relief counsel was ineffective in failing to properly raise that claim in the post-conviction relief proceeding. Id. at 13–14. To pursue such a claim, a petitioner must show that his or her underlying ineffective assistance of counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit" as defined by reference to the standard applicable to determining whether to grant certificates of appealability. Id. at 14.

of winning at trial or what evidence the Commonwealth would produce to prove its case. He further asserts that "[t]he evidence in the case against Petitioner was very overwhelming and any chance of him getting an acquittal was futile. . . . Had he been aware that he stood no chance at winning this case he would have accepted the Commonwealth's plea-offer." (Pet. Objs., ECF No. 20, at 4.)

    16.    Judge Heffley concluded that there was no merit to this claim. Judge Heffley's recommendation is based on the following facts in the state court record:

- At a pretrial motion hearing on February 8, 2013, trial counsel specifically requested that the trial court provide her with an opportunity to speak with Petitioner again regarding the plea offer after a second victim had died.

- After this discussion between trial counsel and Petitioner, the trial judge explained to Petitioner the charges against him, convictions for which could result in a sentence of 20 years for each aggravated assault charge in addition to seven years for homicide by vehicle and four years for third-degree murder.

- The trial judge also explained that the plea offer conveyed by the Commonwealth for Petitioner would result in a 15 to 30-year sentence in exchange for resolving all charges against him.

- When asked by the trial judge whether the plea offer had been communicated to him, Petitioner answered in the affirmative.

- The trial judge questioned Petitioner further, asking whether Petitioner had a full opportunity to talk about his options with his trial counsel. Petitioner replied, "Not really," but, in his explanation of what was meant by this statement, Petitioner failed to point out deficiencies in what his counsel had explained to him regarding the deal. Instead, he complained generally about his dissatisfaction with trial counsel's representation. Plaintiff also never claimed that he did not understand the plea offer.

- After Petitioner expressed to the trial judge that he was not receiving the best representation, the trial judge informed Petitioner that a jury would be selected the Monday after the pretrial hearing to decide his case. The trial judge explicitly asked Petitioner if that was what he wanted, which Petitioner answered in the affirmative.

- Trial counsel requested that the plea offer remain open over the weekend despite Petitioner's response, and, before trial began, trial counsel once more appeared to discuss the plea offer with Petitioner.

- Petitioner pled not guilty to all charges on Monday, February 11, 2013.

17. Judge Heffley also points out evidence in the record showing that Petitioner changed his mind about whether to accept the plea offer. On February 8, 2013, Petitioner said that he wished to go to trial; on February 11, 2013, trial counsel explained that Petitioner wished to accept the Commonwealth's offer, and later that same day, trial counsel stated that Petitioner had changed his mind again before Petitioner finally entered a not guilty plea. Judge Heffley concludes that the fact that Petitioner changed his mind further demonstrates that he understood the repercussions of his choice and that Petitioner's concern, after the fact, that he may have pled unwisely cannot establish an ineffective assistance of counsel claim.

18. Petitioner responds that his allegations of ineffective assistance of trial counsel "versus the allegations of the Commonwealth create[] 'disputed factual issue' [sic] warranting an evidentiary hearing." (Pet. Objs., ECF No. 20, at 7.)

19. Ineffective assistance of counsel claims are analyzed under the two-part test set forth in United States v. Strickland, 466 U.S. 668 (1984), to determine whether a defendant's constitutional rights have been violated by trial counsel's performance. Id. at 687. First, "the defendant must show that counsel's performance was deficient," i.e., that it fell below "prevailing professional norms." Id. at 687–88. Second, "the defendant must show that the deficient performance prejudiced the defense," i.e. "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. To prove an unfair trial, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

20. The standard for assessing counsel's performance under the first prong of Strickland is whether counsel's representation fell below an objective standard of reasonableness:

8

> Courts must be highly deferential to counsel's reasonable strategic decisions . . . . Thus, the court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel. . . . the mere existence of alternative—even preferable or more effective—strategies does not satisfy the requirements of demonstrating ineffectiveness under [Strickland].

Enright v. U.S., 347 F. Supp. 2d 159, 166 (D.N.J. 2004) (internal quotation marks omitted) (citing Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002)).

21. In a recent pair of cases, the Supreme Court held that defense counsel has a duty to communicate formal plea offers to the defendant and that failure to properly communicate an offer may constitute ineffective assistance of counsel. Missouri v. Frye, 566 U.S. 133, 145 (2012). In order to effectively assist their clients in the plea-bargaining process, counsel must provide a criminal defendant "enough information 'to make a reasonably informed decision whether to accept a plea offer.'" U.S. v. Bui, 795 F.3d 363, 366 (3d Cir. 2015) (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013)). To establish that counsel's improper communication of a plea offer constitutes ineffective assistance, a defendant must show that, "but for [counsel's failure,] there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or the sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 566 U.S. 156, 164 (2012).

22. The United States Court of Appeals for the Third Circuit has stated that "a habeas petitioner states a claim under the Sixth Amendment when he contends that the advice he received from counsel regarding a plea bargain was so insufficient or incorrect as to undermine his ability to make an intelligent decision whether to accept the plea offer." Enright, 347 F. Supp. 2d at 164 (citing U.S. v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).

9

23. The Third Circuit has not defined a precise standard of performance of defense counsel in the plea-bargaining context. See Day, 969 F.2d at 43.[4] But it has stated that "'[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" U.S. v. Booth, 432 F.3d 542, 549 (3d Cir. 2005) (quoting Day, 969 F.2d at 44).

24. Here, although Petitioner's ineffective assistance of trial counsel claim regarding the plea offer was never raised in state court, Judge Heffley's analysis on the merits of this habeas claim was based on the trial court record.

25. I find the trial court record to reflect that: (1) trial counsel met with Petitioner several times to discuss the plea offer, asking the trial judge on at least three occasions to either give trial counsel another opportunity to speak with Petitioner about the plea offer or leave the plea offer open in order to provide Petitioner with more time to consider it; (2) trial counsel understood the impact of the second victim's death and requested that the trial judge allow her an opportunity to discuss the consequences of that death with Petitioner (Petitioner acknowledges that trial counsel did, in fact, inform him of the plea offer and the consequences of the second victim's death (Pet. Objs., ECF No. 20, at 6)); (3) the trial judge explained to Petitioner the charges against him and the sentence that could result from each charge—20 years for each aggravated assault charge, seven years for homicide by vehicle, and four years for third-degree murder; (4) the trial judge informed Petitioner that the Commonwealth's offer would result in a sentence of 15 to 30 years in

---

[4] Providing incorrect advice regarding a possible plea is not *per se* deficient. See, e.g., Hill v. Lockhart, 474 U.S. 52, 60 (1985) (reserving the issue of whether incorrect advice regarding parole eligibility could be deemed deficient performance); Day, 969 F.2d at 43; United States v. Nino, 878 F.2d 101, 105 (3d Cir. 1989) (reserving the issue of whether counsel's performance was deficient in light of holding that petitioner was not prejudiced by counsel's failure to inform him of deportation consequences of guilty plea).

exchange for resolving all charges against him; (4) the trial judge explicitly questioned Petitioner about the plea offer and whether he understood his options; (5) although Petitioner expressed general dissatisfaction with trial counsel's representation, Petitioner did not raise any specific deficiencies with trial counsel's explanation of the plea offer (5) Petitioner affirmed to the trial judge that the plea offer was communicated to him and that he wanted to proceed to trial; (6) and Petitioner changed his mind regarding the plea at least twice on the eve of trial before ultimately entering a plea of not guilty. Based on this evidence, I conclude that Petitioner's trial counsel provided constitutionally competent representation during the plea-bargaining process.

26.     The only deficiencies that Petitioner now raises are trial counsel's alleged failure to inform him of his chances of winning at trial and what evidence the Commonwealth had to produce in order to prove its case against him.[5]

27.     Taking these alleged deficiencies as true, I find no clear error in Judge Heffley's conclusion that, based on the standard set forth in Lafler, Petitioner's claim is meritless and, therefore, does not excuse procedural default under Martinez. Petitioner baldly states that, if he had known that he had no chance of winning at trial, then he would have accepted the plea offer. However, I find that holding trial counsel to such a standard of performance is not reasonable under Strickland. See Lee v. U.S., 137 S. Ct. 1958, 1966 (2017) ("[C]ommon sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty involves assessing the respective consequences of a

---

[5] I note that trial counsel's alleged failure to explain to Petitioner what evidence the Commonwealth had to produce in order to prove its case against him was not raised in the habeas petition and was, therefore, not before Judge Heffley. Petitioner's attempt to raise new facts in his objections to Judge Heffley's R&R that he failed to previously raise in his petition or at any point before the R&R was issued does not form a sufficient basis to challenge the R&R's recommendation that this request for habeas relief be denied. "A habeas petition must 'specify all grounds for relief available to the petitioner and state the facts supporting each ground.'" Castillo v. Fisher, No. 14-0418, 2018 WL 701857, at *1 (M.D. Pa. Feb. 2, 2018) (quoting Mayle v. Felix, 545 U.S. 644, 655 (2005)).

conviction after trial and by plea."); Boston v. Mooney, No. 14-229, 2015 WL 6674530, at *19 (E.D. Pa. Jan. 9, 2015) ("[I]t must be held that a competent defense attorney may reasonably decline to give a probability estimate . . . . In that regard, a defendant of ordinary intelligence can reasonably infer the probabilities of success on that information alone."); see also Boston v. Mooney, 141 F. Supp. 3d 352, 362 (E.D. Pa. Oct. 29, 2015) (recognizing the proposition that "no specific estimate of the trial outcome is required" and that the defense attorney's refusal to quantify any probability of success at trial was reasonable).

28. Although Petitioner considers it preferable or even more effective, trial counsel was not reasonably required to tell Petitioner that he had no chance of winning at trial based on the Commonwealth's evidence in order to provide effective assistance in the plea-bargaining context. I cannot engage in a *post hoc* exercise in order to guarantee Petitioner a perfect trial with optimally proficient counsel. See Marshall, 307 F.3d at 85. Rather, I can only guarantee that Petitioner received a fair trial with constitutionally competent counsel, and I conclude that Petitioner received constitutionally competent representation regarding the plea offer.

29. The state court record shows that Petitioner was aware of the comparative sentence exposure of standing trial and accepting the plea offer. This information, crucial to Petitioner's decision regarding the plea, was explicitly communicated to Petitioner by the trial judge. See U.S. v. Booth, 432 F.3d at 549. And Petitioner admits that his trial counsel communicated the plea offer to him and that she discussed with him the consequences of the second victim's death. The record also reflects that trial counsel made repeated efforts to discuss the plea offer with Petitioner and provide him with more time to consider it. Finally, the state court record suggests that Petitioner understood the advantages and disadvantages of the plea offer because, after he rejected the offer and his counsel's efforts provided him with more time to consider the offer over the

weekend, Petitioner changed his mind and agreed to accept the offer before ultimately changing his mind again and pleading not guilty.

30. I therefore conclude that Petitioner has not established that trial counsel's alleged failure to inform him that he had no chance of winning at trial was so insufficient or incorrect that it undermined his ability to make an intelligent decision on whether to accept the plea offer. See Day, 969 F.2d at 43.

31. I also find that the alleged deficiencies relied on by Petitioner fail to establish that but for the ineffective advice of counsel there was a reasonable probability that the plea offer would have been presented to the trial court. Petitioner was aware of the comparative sentencing exposure between standing trial and accepting the plea offer, and he twice changed his mind before entering a plea of not guilty. Apart from Petitioner's bare allegation that he would have accepted the plea offer if he had known that he had no chance of winning, Petitioner states no facts to support that assertion or to undermine the evidence in the record belying that argument. See Lee, 137 S. Ct. at 1966 (reasoning that, even when the consequences of a conviction after trial and by plea are, "from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive.")

**WHEREFORE**, for the foregoing reasons, it is hereby **ORDERED** that:

1. Petitioner's "Request for Leave to Supplement and that this Court Treat His Response Filed on 7/17/19 as an Objection to U.S.M.J. Marilyn Heffley's Report [and] Recommendation" (ECF No. 26) is **GRANTED** as to the request to construe Petitioner's response filed in July 2019 as an objection to the R&R. The request is **DENIED** in all other respects.

2. Petitioner's Objections (ECF No. 20) are **OVERRULED**.

3. The Report and Recommendation (ECF No. 19) is **APPROVED** and **ADOPTED**.

4. The Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED** with prejudice and **DISMISSED** without a hearing.

5. There is no basis for the issuance of a certificate of appealability.

6. The Clerk of Court is directed to mark this case **CLOSED**.

**BY THE COURT:**

*/s/ Mitchell S. Goldberg*
**MITCHELL S. GOLDBERG, J.**